IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIANE KUCHAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 06 C 4501 |
| ) | |
| OFFICER G. VETTER, OFFICER ) | |
| SUCHARZEWSKI, SGT. SIMON, ) | |
| ADVOCATE CHRIST MEDICAL CENTER, ) | |
| DR. HAROLD McGRATH, ) | |
| R. BONGARD, M.D., K. NAZIMUDDIN, M.D., ) | |
| M. ALEJOS, M.D., J. SAN LUIS, ) | |
| MICHELLE HUBBARD, ISAAC ALABI, ) | |
| WALI LEWIS, ROBERTA ALLEN, ) | |
| SUSAN DUKES, and DENEEN GREEN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

*Pro se* plaintiff Diane Kuchay filed a 140-page, 232-paragraph complaint against seventeen defendants, including three Oak Lawn police officers, Advocate Christ Medical Center, a physician with Advocate, and a number of physicians and other medical and psychiatric personnel employed at Tinley Park Mental Health Center. Ms. Kuchay's complaint is extraordinarily detailed; it gives what amounts to an hour-by-hour account – and sometimes a minute-by-minute account – of the alleged events that gave rise to her complaint. In broad terms, those events appear to involve her arrest by Oak Lawn police officers in 2004 and her resulting involuntary commitment to a psychiatric facility.

Ms. Kuchay's complaint is, however, replete with allegations against people whom she

has not sued. It also includes some other rather unusual allegations. These include, among others, Ms. Kuchay's claim that "white vans with Moslem [sic] inside had been following her, and the they would hit her rear bumper, honk their horns and two or more vans would surround her car," *see* Compl. ¶ 100; her allegation that several conductors on a Metra train "were aware of the website that Moslems built about her and were monitoring her activities on the website," *see id.* ¶ 199, and her allegation that she "was giving information to the FBI and that the people she reported to them found out about it and began harassing [her], attempted to kidnap [her], and were vandalizing her car." *See* Compl. ¶ 100.

Following the Court's initial review of Ms. Kuchay's complaint, the Court believed that Ms. Kuchay might possibly have a colorable claim embedded somewhere in the quagmire of minutiae set out in her complaint. The Court was, however, concerned about the prolixity of the complaint and the fact that it was replete with allegations that appeared to be extraneous to any claims that Ms. Kuchay might legitimately make. For this reason, the Court decided to appoint counsel pursuant to 28 U.S.C. § 1915(e)(1) and the *pro bono* program established pursuant to Northern District of Illinois Local Rule 83.35 - 83.41, hoping that counsel would be able to separate the wheat from the chaff.

At two status hearings held in open court, appointed counsel indicated that he and his colleagues had met with Ms. Kuchay on several occasions and were working on an amended complaint. The Court extended the time for filing an amended complaint to January 10, 2007.

Then, on December 11, 2006, appointed counsel filed a motion seeking to withdraw from the case. Counsel's motion disclosed that he had met with Ms. Kuchay on five separate occasions, communicated with her extensively by telephone, prepared and served several

subpoenas for records and reviewed the records received, and contacted several potential witnesses to interview them.  The motion disclosed, however, that as a result of "[v]arious incidents . . . including unfounded accusations and innuendo set forth in voicemail messages from Ms. Kuchay, telephone discussions, and correspondence, including . . . a letter from Ms. Kuchay delivered this afternoon, December 11, 2006," counsel had "insurmountable concerns" that prevented him and his firm from further representing Ms. Kuchay.

Appointed counsel appeared in Court on December 13, 2006 to present the motion.  At that time, counsel elaborated on some of the statements contained in his motion.  Specifically, he stated that Ms. Kuchay "has made allegations that . . . an associate in our office . . . is serving as an informant to Muslim groups, reporting information about her case outside the four walls of our offices.  It got to the point where I had to remove that associate from working on the case out of her fear and concern."  Dec. 13, 2006 Tr. at 3.  Counsel also referred to other allegations by Ms. Kuchay that his law firm was not acting diligently on her behalf.  He stated that he could "handle a client's criticism about our legal work . . . [b]ut something happened over this weekend . . . on Sunday I received a voice mail message which was angry in tone, a bit more militant, about why her amended complaint had not been filed."  *Id.* at 4.

On Monday, December 11, counsel stated, he received a message from Ms. Kuchay that started by complaining that an amended complaint had not been filed but then "morphed into [Ms. Kuchay] rhetorically asking the question why I . . . keep asking her, so you want to slit your wrists, and then asking me, am I trying to get her to hit me."  The voice mail, counsel stated, "got increasingly more agitated and frightening."  It was then followed up by a letter, counsel stated, that "ends up suggesting to me that I stop monitoring the Muslim web sites which feature

3

information about her and instead focus on drafting her complaint." *Id.* These events, counsel stated, had prompted his law firm to hire an armed security guard and to contemplate hiring security to protect him and his colleagues. *Id.* at 4-5.

The Court granted counsel's motion to withdraw. The next day, December 14, Ms. Kuchay showed up at the court's morning call. Though her case was not set for that date, upon learning that Ms. Kuchay was present, the Court called the case and explained to her, in general terms, what had taken place on December 13. The Court advised Ms. Kuchay that it intended to review her complaint and determine whether, and on what terms, to allow her case to proceed. Ms. Kuchay provided the Court a copy of her December 11 letter to appointed counsel. The letter, consistent with the description appointed counsel had provided to the Court on December 13, accused counsel of wanting Ms. Kuchay to commit suicide. This, the Court notes, is an accusation that echoes some of the allegations Ms. Kuchay has made against various medical personnel in her *pro se* complaint. Ms. Kuchay's letter also suggested that the primary appointed counsel might be "conspiring" against her, along with the previously-mentioned associate at the law firm.

A few days later, Ms. Kuchay came to chambers and delivered letters dated December 15 and December 18, along with another copy of the December 11 letter. Ms. Kuchay's December 15 letter made a variety of conspiratorial accusations about people at appointed counsel's firm. Her December 18 letter repeated these allegations. In that letter, she accused a lawyer at appointed counsel's firm of "trying hard to sabotage my lawsuit behind the scenes" and repeated her allegations about "the website that the Moslems made of me," and making further conspiratorial allegations. (The Court will make these letters a part of the record.)

The Court concludes that Ms. Kuchay has, by her own actions as confirmed by the letters she provided to the Court, forfeited any legitimate claim to have another lawyer appointed to represent her. The Court has carefully reviewed Ms. Kuchay's correspondence and the actions of appointed counsel and sees no basis to support Ms. Kuchay's accusations that counsel were not representing her adequately or were working against her interests. These allegations appear to the Court to be, quite simply, figments of Ms. Kuchay's imagination. In light of Ms. Kuchay's unfounded accusations against the attorney the Court appointed to represent her, the Court is unwilling to burden any more lawyers with the obligation of representing Ms. Kuchay on a *pro bono* basis.

The Court has reviewed Ms. Kuchay's complaint to determine if the complaint is frivolous, malicious, or fails to state a claim. This review is required by 28 U.S.C. § 1915(e)(2) in light of Ms. Kuchay's filing of a motion to proceed *in forma pauperis* (which the Court previously granted).

Under Federal Rule of Civil Procedure 8(a), a complaint is supposed to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." No such "short and plain statement" may be found in Ms. Kuchay's complaint; her complaint is neither short nor plain.

This is not just a technical problem. A complaint that is prolix or confusing "makes it difficult for a defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation." *Vicom, Inc. v. Harbridge Merchant Svcs., Inc.,* 20 F.3d 771, 775-76 (7th Cir. 1994); *see also, Jennings v. Emry,* 910 F.3d 1434, 1436 (7th Cir. 1990) (stating that a complaint "must be presented with clarity sufficient to avoid requiring a district court to sift
5

through its pages in search" of what it is the plaintiff asserts). In short, "[l]ength may make a complaint unintelligible, by scattering and concealing in a morass of irrelevancies the few allegations that matter." *United States ex rel. Garst v. Lockheed-Martin Corp.,* 328 F.3d 374, 378 (7th Cir. 2003).

Such is the case with Ms. Kuchay's complaint. Her complaint is so layered with detail, much of which is quite plainly irrelevant, that one cannot sort out what she claims that each defendant did that entitles her to sue the particular defendant. It would be virtually impossible for a defendant to formulate a response to the complaint in its current form. Just as importantly for present purposes, it is impossible for the Court to determine whether the complaint meets the standards of section 1915(e)(2) as to any particular defendant.

For these reasons, the Court dismisses plaintiff's complaint pursuant to Rule 8 and § 1915(e)(2). The Court will give plaintiff leave to file an amended complaint that conforms to the requirements of the applicable rules. What plaintiff must do in her amended complaint is state, in simple terms, what it is that each defendant did that gives the plaintiff a basis to sue him or her. *See, e.g., Dura Pharmaceuticals v. Broudo,* 544 U.S. 336, 346 (2005) (a "short and plain statement must provide the defendant with "'fair notice of what the plaintiff's claim is and the grounds upon which it rests,'" quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). As Judge Posner wrote for the Seventh Circuit in 1999:

> All that's required to state a claim in a complaint filed in a federal court is a short statement, in plain (that is, ordinary, nonlegalistic) English, of the legal claim. Form 9 in the forms appendix to the civil rules gives as an example, "On June 1, 1936, in a public highway called Boylston Street in Boston, Massachusetts, defendant negligently drove a motor vehicle against plaintiff who was then crossing said highway"; and Rule 84 states that the forms in the forms appendix "are sufficient under the rules and are intended to indicate the simplicity and

6

brevity of statements which the rules contemplate."

*Kirksey v. R.J. Reynolds Tobacco Co.,* 198 F.3d 1039, 1041 (7th Cir. 1999).

The Court anticipates that any proposed amended complaint will be considerably shorter, and more to the point, than the original version. Plaintiff should omit from her amended complaint details that are not essential to understanding what each defendant did that injured plaintiff or violated her legal or constitutional rights. Assuming the Court concludes that the revised complaint properly states a claim for relief, plaintiff will have the opportunity to provide further evidence to support her claims and to give her full story at a later stage in the case.

The Court will give plaintiff four weeks, until February 1, 2006, to file a proposed amended complaint. The proposed amended complaint, along with a judge's copy as required by Northern District of Illinois Local Rule 5.2(e), is to be filed with the Clerk's office on the 20th floor of the Dirksen Federal Courthouse. If plaintiff fails to file a proposed amended complaint within the time stated, the order dismissing her complaint will become a final order. If plaintiff files a proposed amended complaint, the Court will review it promptly pursuant to 28 U.S.C. § 1915(e)(2).

## Conclusion

For the reasons stated above, the Court dismisses plaintiff's complaint, with leave to file a proposed amended complaint, conforming to the directions given above, on or before February 1, 2006.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 4, 2007