# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DIANNE KUCHAY, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 06 C 4501 |
| OFFICER GERALD VETTER, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Dianne Kuchay filed a *pro se* lawsuit against Oak Lawn police officers, a doctor at Advocate Christ Medical Center, and various medical personnel employed by Tinley Park Mental Health Center, challenging her arrest by the officers in 2004 and her resulting commitment to a psychiatric facility. Ms. Kuchay's *pro se* complaint was extraordinarily long and included a good deal of extraneous matter, as well as allegations that the Court characterized as "rather unusual," *Kuchay v. Vetter,* No. 06 C 4501, 2007 WL 54061, at *1 (N.D. Ill. Jan. 4, 2007), including contentions that "white vans with Moslem [sic] inside had been following [Ms. Kuchay], and that they would hit her rear bumper, honk their horns and two or more vans would surround her car," *see* Compl. ¶ 100; her allegation that several conductors on a Metra train "were aware of the website that Moslems built about her and were monitoring her activities on the website," *see id.* ¶ 199, and her allegation that she "was giving information to the FBI and that the people she reported to them found out about it and began harassing [her], attempted to kidnap [her], and were vandalizing her car." *See* Compl. ¶ 100.

In a decision that the Court issued later, after it reviewed Ms. Kuchay's *pro se* complaint, the Court indicated that it believed that Ms. Kuchay "might possibly have a colorable claim embedded somewhere in the quagmire of minutiae set out in her complaint" but was "concerned about the prolixity of the complaint and the fact that it was replete with allegations that appeared to be extraneous to any claims that Ms. Kuchay might legitimately make." *Kuchay,* 2007 WL 54061, at *1. The Court therefore appointed counsel to represent Ms. Kuchay, "hoping that counsel would be able to separate the wheat from the chaff." *Id.*

The Court was later required, however, to permit appointed counsel to withdraw. In a motion seeking to withdraw his appearance, counsel advised the Court that Ms. Kuchay had repeatedly accused counsel's firm of conspiring with others against her, an accusation that the Court concluded was entirely baseless. These accusations had culminated, counsel advised, in a voice mail left on counsel's telephone in which Ms. Kuchay "rhetorically ask[ed] the question why [counsel] . . . keep asking her, so you want to slit your wrists, and then asking me, am I trying to get her to hit me." *Id.,* at *2. In the voice mail, counsel stated, Ms. Kuchay "got increasingly more agitated and frightening." Ms. Kuchay then followed up with a letter in which she told counsel to "stop monitoring the Muslim web sites which feature information about her and instead focus on drafting her complaint." *Id.* These events, counsel reported, had prompted his law firm to hire an armed security guard and to contemplate hiring security to protect him and his colleagues from Ms. Kuchay.

Shortly after the Court granted appointed counsel's motion to withdraw, Ms. Kuchay provided the Court a copy of a letter she had written to appointed counsel. This letter confirmed the accuracy of counsel's description of Ms. Kuchay's accusations that he and his associate were

2

conspiring against her and that he had suggested to Ms. Kuchay that she commit suicide – an accusation that echoed some of the allegations Ms. Kuchay had made against certain of the defendants in her *pro se* complaint. *See id.* Ms. Kuchay thereafter delivered to the chambers copies of other letters she sent to appointed counsel in which she made a variety of conspiratorial accusations about people at counsel's firm, including a claim that the firm was "trying hard to sabotage my lawsuit behind the scenes," and also repeated her allegations about "the website that the Moslems made of me." *Id.*

In the Court's January 4, 2007 decision, it determined not to appoint substitute counsel to represent Ms. Kuchay. The Court stated that

> Ms. Kuchay has, by her own actions as confirmed by the letters she provided to the Court, forfeited any legitimate claim to have another lawyer appointed to represent her. The Court has carefully reviewed Ms. Kuchay's correspondence and the actions of appointed counsel and sees no basis to support Ms. Kuchay's accusations that counsel were not representing her adequately or were working against her interests. These allegations appear to the Court to be, quite simply, figments of Ms. Kuchay's imagination. In light of Ms. Kuchay's unfounded accusations against the attorney the Court appointed to represent her, the Court is unwilling to burden any more lawyers with the obligation of representing Ms. Kuchay on a *pro bono* basis.

*Id.,* at *3.

In the same decision, the Court directed Ms. Kuchay to file an amended complaint and provided her detailed guidance regarding what she needed to do to comply with federal pleading rules. *Id.,* at 3-4. On January 25, 2007, Ms. Kuchay filed a much shorter version of her complaint. The Court does not know whether Ms. Kuchay prepared this version entirely on her own or whether she filed, or edited, a revised version of the complaint that appointed counsel had prepared or begun to prepare before withdrawing. After reviewing the amended complaint, the

Court dismissed one of Ms. Kuchay's claims and certain of the defendants but otherwise allowed the case to proceed. *See Kuchay v. Vetter,* Case No. 06 C 4501, Order of Feb. 27, 2007.

Ms. Kuchay has, however, continued to make bizarre and baseless accusations. These included, initially, accusations that a member of the assigned judge's staff had made bizarre and threatening statements to and about Ms. Kuchay and that a "male Moslem" was monitoring the court proceedings in a particularly odd way. *See* docket entry 42 (letter to Clerk). The Court gave the following account in an order dated May 15, 2007:

> In [a] letter that Ms. Kuchay sent to the Clerk regarding the assigned judge's courtroom deputy, she stated that "the Moslems made a website about me and [the courtroom deputy] types everything that happens in the courtroom into the website. [She] told me in person that she is the one typing it into the website." Letter of Mar. 1, 2007, p. 1. She also stated that the courtroom deputy "made an announcement in court on January 4, 2007, after my motion was heard" in which she stated that she "attends meetings that the Moslems have and is a secretary for them and when they overtake our government, they promised her that she will be a Judge." *Id.* She stated that on another court date, "a male Moslem strode into the courtroom through the door that the Judge enters and sat on the side of the courtroom. During my motion, I overheard the staff sitting there asking him who he was and if he works in the building. It was apparent that no one knew who he was. He was making comments about me as I was speaking to the Judge ...." *Id.,* pp. 1-2. Ms. Kuchay stated that after the court session, the courtroom deputy turned to this supposed "male Moslem" and "whispered, 'Blow her legs off.'" *Id.,* p. 2. As the Court stated in open court on April 5, 2007, all of these accusations are all utterly false.

*Kuchay v. Vetter,* No. 06 C 4501, Order of May 15, 2007 at 2. In its May 15, 2007 order, the Court noted that there were "common threads in Ms. Kuchay's claims and the accusations she has made against her former appointed counsel, court staff, and some of the defendants she has sued," identifying these common elements in some detail. *Id.* at 1-2.

After reviewing Ms. Kuchay's baseless and rather odd allegations, the Court reached the following conclusions:

4

> The Court has thought long and hard about this matter and believes it is appropriate to make further inquiry regarding Ms. Kuchay's claims. Because Ms. Kuchay was given leave to proceed *in forma pauperis,* that is, without paying a filing fee, the Court has the authority, on its own motion, to examine whether her complaint is malicious, frivolous, or fails to state a claim. *See* 28 U.S.C. § 1915(e). "A claim is factually frivolous if its allegations are bizarre, irrational or incredible." *Edwards v. Snyder,* 478 F.3d 827, 829 (7th Cir. 2007). Certain of Ms. Kuchay's allegations potentially meet this standard.
>
> The current status of the case is that preparations are presumably being made by the Marshal's Service to serve the named defendants with summons. The Court believes that this is an appropriate juncture to reconsider whether the case should be allowed to proceed.
>
> During at least one (and probably more than one) court session in this case, Ms. Kuchay has indicated that she works as an informant for the Federal Bureau of Investigation and that one or more FBI agents can confirm the veracity of her allegations. As noted above, she has also made repeated reference to a website. This, too, is presumably verifiable. Likewise, many of the allegations in Ms. Kuchay's complaint are verifiable if they are accurate.
>
> For these reasons, the Court directs Ms. Kuchay to file with the Court the evidence, documentary or otherwise, that supports her allegations. This should include, at a minimum, the address of the alleged "Moslem website" on which statements about Ms. Kuchay have supposedly been posted; identification of the FBI agent or agents who supposedly will support her claims; documentation regarding her alleged dealings with the FBI; evidence supporting her recent contentions about attempts on her life (*see* Mar. 1, 2007 letter to Clerk, p. 2); documentary and other evidence regarding her arrest by the Oak Lawn police in August 2004; documentary and other evidence regarding her commitment at Tinley Park Mental Health Center and the legal proceedings regarding that commitment referenced in her complaint; and any other evidence that Ms. Kuchay is able to muster that supports her allegations. Though this is not a common procedure for a court to follow, the situation presented by this case is rather unusual, and in the Court's view it calls for these measures before an enormous amount of time, effort, and expense is spent litigating Ms. Kuchay's claims.

*Id.* at 2-3.

Ms. Kuchay failed to submit anything by the date the Court had directed, June 5, 2007.

Rather, she filed a motion asking to "change her status" by paying the filing fee that she had

previously persuaded the Court to waive due to her declared financial status, evidently believing that this would allow her to avoid further preliminary scrutiny of her claims. At a hearing on June 14, 2007, the Court said it would consider Ms. Kuchay's request but advised that she was nonetheless obligated to comply with the Court's earlier order. Ms. Kuchay indicated that she did not believe that she should have to file her evidence with the Court and thereby disclose it at such an early stage in the case. The Court advised Ms. Kuchay that she could make her submission *in camera* and under seal and gave her another week, until June 21, 2007, to comply with the May 15 order.

On June 21, 2007, Ms. Kuchay filed under seal, in two large envelopes, a collection of documents. *See* docket entry 69. At a hearing on July 2, 2007, the Court advised Ms. Kuchay that she had not complied with the Court's May 15, 2007 order in at least two respects: she had included nothing to support the claimed existence of the supposed "Moslem website" about her, and she had provided nothing to suggest that, as she had claimed, federal law enforcement representatives could verify the truth of some of her odd contentions. At the same hearing, the Court advised Ms. Kuchay that she could pay the filing fee if she wished to do so but questioned whether this would cut off the Court's effort to determine whether her claims were factually frivolous. Ms. Kuchay paid the filing fee on or about July 5, 2007. On July 9, 2007, Ms. Kuchay submitted additional documents contained in a single envelope, though she had not asked to make a further submission and the Court had not extended the earlier deadline of June 21. *See* docket entry 78.

Since making her June and July *in camera* submissions, Ms. Kuchay has launched a new series of accusations against the Court, chambers staff, and clerk's office staff, in effect accusing

these persons of joining or continuing a conspiracy against her and disclosing the sealed documents. Specifically, Ms. Kuchay has claimed on repeated occasions that Oak Lawn police officers and others, including "several Moslems," have approached her on the street and have supposedly "repeated" excerpts from the *in camera* submissions in such a way, Ms. Kuchay says, to make it clear that those submissions were leaked by someone connected with the Court. *See* docket nos. 81 & 93, as well as statements by Ms. Kuchay in open court. The Court has, following each such accusation, advised Ms. Kuchay that her allegations are untrue. Only the Court (i.e., the assigned judge) has reviewed the documents that Ms. Kuchay has submitted; no one else on chambers staff or in the Clerk's office has done so.[1] The Court says this with absolute assurance, because he himself opened the sealed submissions and has kept them within his control, and away from the access of anyone else, ever since. In short, no one else has reviewed or been able to review the materials submitted by Ms. Kuchay under seal. Ms. Kuchay's accusations that someone from chambers staff or the clerk's office leaked the materials are false. And, though it should go without saying, the Court will say it anyway – the Court has not disclosed the contents of Ms. Kuchay's sealed submissions to anyone or allowed anyone to look at those submissions or any part of them.

The Court's repeated statements have, however, been entirely unsuccessful in putting a stop to Ms. Kuchay's allegations of conspiracy and misconduct against court staff. In a motion seeking a restraining order, filed on July 30, 2007, Ms. Kuchay accused Oak Lawn police officers

---

[1] Indeed, in one of her filings, Ms. Kuchay made an assertion that the July 9 submission had been disclosed to outsiders before the Court was even aware it had been filed (as noted earlier, the Court had not expected the July 9 submission). Upon reading this assertion, the Court obtained the July 9 submission from the vault in the clerk's office; the submission was still sealed.

of harassing, threatening, and intimidating her on a series of occasions. The Oak Lawn defendants responded to the motion in writing. In a reply to the defendants' response, filed on August 6, 2007, Ms. Kuchay made further accusations against Oak Lawn village and police personnel and also made the following allegations against members of court staff:

- Ms. Kuchay stated that a particular unnamed Oak Lawn police officer "has had access to the evidence that was filed in the court clerk's office under seal and that the Court had removed from the vault to study. Therefore, someone from the Court made copies of the evidence, illegally, and gave it to them." Reply to Defs.' Resp. in Opp. to Mot. for Restraining Order (docket no. 93) ¶ 22 (emphasis added). As the Court has repeatedly told Ms. Kuchay, this and similar allegations are utterly untrue. No one has had access to the sealed submissions other than the assigned judge, who has made no copies, has not allowed anyone to see the submissions, and has not disclosed their contents.

- Ms. Kuchay stated that "the information from the sealed evidential documents that Ms. Kuchay filed with the clerk's office, was copied and given to the Defendant police officers, directly or through a go-between, by a member of the Court's staff." *Id.* ¶ 47. Again, this is untrue, as stated in the previous paragraph.

- Ms. Kuchay stated that "[d]uring at the hearing [on the motion for restraining order], the court room Deputy . . . admitted four times, off the record, that she was the person who made copies of sealed documents and removed them from the court." *Id.* ¶ 49. The Court was present during the entirety of the hearing. The Courtroom Deputy made no statements of any kind, other than to call the case. The only talking that was done once the case was called and before the Courtroom Deputy called the next case was by the assigned judge, Ms. Kuchay, or

8

counsel for the defendants.

- Ms. Kuchay stated that copies of the sealed submissions "could only be made by staff from the Court who had access to the documents. Granted, the courtroom deputy is not allowed to read sealed documents. But, she did and she admitted to it, off the record. . . . The Court should then follow the law and remove [its Courtroom Deputy] from the federal courtrooms, whether by firing her or charging her." *Id.* ¶ 50. Again, the Courtroom Deputy has not had, at any time, access to the sealed submissions – and to repeat, the assigned judge opened the seals himself and has had the evidence in his exclusive control at all times since.

- Ms. Kuchay stated that she "feels that the Court, in allowing [its Courtroom Deputy] to remain, is causing more stress, and further escalating problems of security in regards to conversations during stated hearings, documents that are of a highly sensitive nature and also Ms. Kuchay's safety and security. Ms. Kuchay already has security escorting her to Court for protective reasons because of death threats and harassment from . . . the courtroom deputy." *Id.* ¶ 52. As the Court advised Ms. Kuchay at a hearing on August 9, 2007, she is being escorted by courthouse security when she comes to the courthouse at the Court's direction, as a matter of prudence, as a result of her repeated and bizarre accusations against former appointed counsel, courthouse staff, and others, – *not* because any threats were made *to* Ms. Kuchay.

- Ms. Kuchay stated that the assigned judge's Courtroom Deputy "fabricated a story to the Deputy Marshall's to try to instigate trouble for Ms. Kuchay. And thus the security escort. But, the security escort is also there for another threat that occurred at the same time." *Id.* ¶ 53. As the Court advised Ms. Kuchay on August 9, 2007, it was Court (i.e., the assigned judge), not the Courtroom Deputy, who asked the Marshal's Service to have courthouse security escort Ms.

9

Kuchay when she is in the courthouse.

In denying Ms. Kuchay's motion for a restraining order in an oral ruling on August 9, 2007, the Court, once again, advised Ms. Kuchay that her allegations were untrue and also advised Ms. Kuchay that the Court was going to consider whether her case should be allowed to proceed, in light of her apparent penchant for abusing the litigation process.

The Court has now considered the matter further and determines that it is appropriate to dismiss Ms. Kuchay's case with prejudice because of her contniuing abuse of the litigation process. In addition to her repeated and baseless accusations of misconduct on the part of court staff, Ms. Kuchay's *in camera* submissions made in response to the Court's May 15, 2007 order are deficient. The first submission (consisting of two envelopes of documents) certainly confirmed that Ms. Kuchay was taken into custody by Oak Lawn police, taken to a hospital, and later committed for psychiatric reasons.[2] But the submission conspicuously omitted any supporting material for Ms. Kuchay's repeated references to a "Moslem web site" about her or any material supporting her contention that the FBI could confirm aspects of her story – contentions that seem, from Ms. Kuchay's original complaint, to provide the factual underpinnings for her repeated claims of a wide-ranging conspiracy to do her harm. After the Court pointed this out this omission to Ms. Kuchay, she made her second submission, which she filed under seal on July 9, 2007. The materials in this submission consisted exclusively of a series of letters by Ms. Kuchay to federal law enforcement in which she makes a variety of

---

[2] These materials include reference to correspondence that Ms. Kuchay sent to Advocate Christ Medical Center that evidently resulted in her being taken into custody by the police. The materials tend to confirm the reasonableness of the decision to take Ms. Kuchay into custody and transport her to a psychiatric facility, though the Court makes no final determination of that issue.

unusual accusations against numerous people, including law enforcement representatives with whom she claims to have met. Missing, however, is anything that so much as hints at confirmation that the FBI could, as Ms. Kuchay has claimed, confirm aspects of her claims of repeated threats of violence, kidnapping attempts, and violence by what she contends in one of the documents is a conspiracy consisting of "Moslems." Also missing is any confirmation of the existence of the supposed "Moslem web site" about Ms. Kuchay to which she has made repeated reference – including in her accusations against the assigned judge's Courtroom Deputy.

A federal court is vested with the inherent authority to impose sanctions to achieve the "'orderly and expeditious disposition of cases.'" *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630-31 (1962)); *see also, Dotson v. Bravo,* 321 F.3d 663, 667 (7th Cir. 2003). Though a court must exercise this inherent authority with restraint and discretion, "[a] primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44-45.

Dismissal of a case may, in appropriate circumstances, be an appropriate sanction for a litigant's misconduct. *Id.* at 45. The Seventh Circuit has noted that "[m]isconduct may exhibit such flagrant contempt for the court and its processes that to allow the offending party to continue to invoke the judicial mechanism for its own benefit would raise concerns about the integrity and credibility of the civil justice system that transcend the interests of the parties immediately before the court." *Barnhill v. United States,* 11 F.3d 1360, 1368 (7th Cir. 1993).

This is such a case. The history of Ms. Kuchay's litigation before the Court has consisted in large part of allegations of an ever-widening conspiracy, including not only the defendants named in the case and those associated with them, but also an associate of the attorney appointed

11

by the Court to represent Ms. Kuchay, the appointed attorney himself, members of the Clerk's office staff, members of chambers staff, and, perhaps, the assigned judge. The Court does not know whether Ms. Kuchay suffers from a medical condition that causes her to experience delusions,[3] but whatever the reason, she has spun stories about alleged happenings in the courtroom that, quite simply, did not occur and thus can only be characterized as delusional, frivolous, and/or malicious. Though the Court has a thick skin, it will not allow Ms. Kuchay to use this litigation as a launching pad for baseless accusations against the persons referenced above and, just as likely, others she has not yet accused but who will, in the future, come within her sights for some reason. The Court has no doubt that Ms. Kuchay's improper conduct will continue and perhaps escalate as long as the case is permitted to proceed; she has continued to make baseless accusations even after she has repeatedly been called to task.

In this regard, Ms. Kuchay's misconduct, as recounted above, is no less serious than the misconduct of the plaintiff in *Dotson,* whose case, the Seventh Circuit held, was properly dismissed as a sanction under the trial court's inherent authority. The plaintiff in *Dotson* filed suit under a false name, gave false answers to written interrogatories and in a deposition, and otherwise concealed his true identity. The Seventh Circuit characterized this conduct as "flagrant contempt" that justified the trial court's dismissal of the case. *Dotson,* 321 F.3d at 669. In the present case, Ms. Kuchay has repeatedly made false accusations of criminal or otherwise contemptuous misconduct against court personnel even after having been warned; she has

---

[3] In one of the letters to law enforcement provided as part of Ms. Kuchay's July 9, 2007 submission, she announced that she is "precognitive, retrocognitive and telepathic" and has predicted terrorist attacks and other disasters in advance. *See* July 9, 2007 submission, Ex. 16 (third page).

12

repeatedly made baseless accusations that various people, including court staff and appointed counsel, have monitored her actions and communications or have tried to get her to do harm to herself; and speaking generally, she has made a significant number of bizarre allegations that are likely delusional, or if not delusional are malicious and/or frivolous.

Allowing Ms. Kuchay to continue to litigate in this matter would be to countenance an ongoing abuse of the court system for improper purposes. It is unfair to saddle the court system, not to mention the litigants, with the burden of litigating in this fashion.

## Conclusion

For these reasons, the Court directs the Clerk to enter judgment dismissing the case with prejudice. All pending motions are terminated as moot.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 20, 2007